# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3188-17T3
                 A-3189-17T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

T.C. and A.A.M.,

     Defendants-Appellants.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF E.A.M.,

     a Minor.

_____

Submitted January 14, 2019 – Decided January 23, 2019

Before Judges Sabatino, Haas and Mitterhoff.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0188-17.

Joseph E. Krakora, Public Defender, attorney for appellant T.C. (Eric R. Foley, Designated Counsel, on the briefs).

Joseph E. Krakora, Public Defender, attorney for appellant A.A.M. (Howard P. Danzig, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Amy L. Bernstein, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Danielle Ruiz, Designated Counsel, on the brief).

PER CURIAM

In these consolidated appeals, defendant A.M.[1] ("the mother") and T.C. ("the father") seek to overturn the Family Part's March 1, 2018 final judgment of guardianship terminating their respective parental rights to their biological daughter, E.A.M. ("Emily"). Emily, who is now the age of three, has two older half-siblings and a younger half-sibling that are the biological children of the mother. The father is not the biological father of Emily's half siblings with the mother. Those half-siblings have been placed with other caretakers and are not parties to the present litigation.

---

[1] We use initials and pseudonyms to protect the privacy of the children. R. 1:38-3(d)(12).

2

A-3188-17T3

After a three-day guardianship trial at which the defendant parents presented no witnesses, the trial judge issued a detailed thirty-five-page written opinion concluding that the Division of Child Protection and Permanency ("the Division" or "DCPP"), had proven by clear and convincing evidence all four necessary prongs of N.J.S.A. 30:4C-15.1(a), to warrant the termination of defendants' respective parental rights.

Among other things, the trial judge found that: neither defendant is fit to parent Emily, given their persisting limitations; both parents have endangered Emily's safety, health, and development and they are unable or unwilling to eliminate that risk of harm and provide her with a stable home; the Division has made reasonable efforts to provide services to the parents without success and adequately explored alternative caretakers; and terminating the parents' rights to Emily, who has bonded favorably with a resource parent who is committed to adopting her, would do no more harm than good. The judge specifically found credible the unrebutted trial testimony of the Division's evaluating psychologist whom the court characterized as "well-qualified." We affirm.

I.

The record shows the mother was sexually abused as a child. She has been diagnosed with bipolar disorder, Post Traumatic Stress Disorder ("PTSD"), and

major depression. She suffers from hallucinations as well as memory loss after allegedly being struck in the head as a minor. As a child, the mother herself was the subject of the Division's intervention. She has a long history of unemployment and instability.

On February 28, 2016, the mother took the three children to the hospital to be treated for minor injuries. At the hospital, the mother "zoned out" when hospital staff were interacting with her. Staff members called the Division, and the mother was thereafter involuntarily committed for psychiatric treatment. The Division conducted an emergency removal[2] after arriving at the hospital and placed the two older half-siblings with one resource family and placed Emily, who was only an infant at the time, with a different resource family.

The mother has been diagnosed with various neuropsychological disorders and continues to have functional difficulties. During the course of the litigation, the Division offered her various services, only a few of which she pursued. She was sporadic in her visits with the child. The mother eventually moved to Georgia and had another child, whom she also is not raising.

---

[2] A Dodd removal is an emergent removal of a minor without a court order pursuant to N.J.S.A. 9:6-8.21 to -8.82 (the Dodd Act). N.J. Div. of Youth & Fam. Servs. v. P.W.R., 205 N.J. 17, 26 n.11 (2011).

The father, meanwhile, has had multiple incarcerations and chronic substance abuse problems with both marijuana and alcohol. While this litigation was pending, he failed multiple urine screens. The father has never lived in the same household as the child. He did complete various services but continued to be unable to be an effective and responsible parent. Notably, he never offered to serve as the caretaker of the child.

The father did suggest the Division consider his god-sister T.B., who is raising a different child (another half-sibling of Emily) that he fathered with another woman. However, that potential caregiver failed to provide the Division with the necessary paperwork on time and there was no proof that she was actually able to take Emily into her own home. Consequently, the Division ruled her out.

Meanwhile, the testimony from the Division's caseworker, which the trial court found credible, reflects that Emily has been doing well in the care of her resource parent. As we have already noted, that resource parent wishes to adopt her.

A-3188-17T3

## II.

On appeal, each parent's brief challenges the trial court's findings as to them individually, concerning all four prongs of the statutory test under N.J.S.A. 30:4C-15.1(a).

In her brief, the mother raises the following points:

> POINT I: THE SIBLING RIGHTS OF [EMILY] AS WELL AS HER THREE SIBLINGS SHOULD NOT HAVE BEEN IGNORED.
>
> POINT II: THE FACTS BELOW DO NOT SUPPORT A LEGAL FINDING THAT ALL FOUR PRONGS UNDER N.J.S.A. 30:4C-15.1(a) WERE MET IN THIS CASE.
>
> POINT III: THERE WAS INSUFFICIENT EVIDENCE TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT [EMILY]'S SAFETY, HEALTH OR DEVELOPMENT HAS BEEN OR WILL CONTINUE TO BE ENDANGERED BY THE PARENTAL RELATIONSHIP UNDER THE FIRST PRONG: THERE WAS NO HARM CAUSED OR THREATENED.
>
> POINT IV: THERE WAS INSUFFICIENT EVIDENCE UNDER THE SECOND PRONG TO CONCLUDE THAT [THE MOTHER] WAS UNWILLING TO ELIMINATE A HARM.
>
> POINT V: DCPP FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT IT MADE REASONABLE EFFORTS TO HELP [THE MOTHER] AND THE COURT FAILED TO CONSIDER ALTERNATIVES TO TERMINATION

6

OF HER PARENTAL RIGHTS UNDER THE THIRD PRONG.

POINT VI: THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE TRIAL COURT'S LEGAL CONCLUSION THAT TERMINATION OF [THE MOTHER]'S PARENTAL RIGHTS WILL NOT DO MORE HARM THAN GOOD, UNDER THE FOURTH PRONG.

In his brief, the father argues:

THE JUDGMENT OF GUARDIANSHIP SHOULD BE REVERSED BECAUSE THE COURT MISAPPLIED THE LAW IN FINDING THAT DCPP MET ITS BURDEN OF PROOF UNDER THE FOUR PRONGS OF THE "BEST INTEREST" STANDARD PURSUANT TO N.J.S.A. 30:4C-15.1.

A. The court misapplied the prevailing legal standards under the first prong where DCPP failed to establish by clear and convincing evidence that [the father] harmed or could not cease harming [Emily].

B. The court misapplied the prevailing legal standards under the second prong of the "best interest" standard whereby [the father] can become a fit parent in the foreseeable future.

C. The trial court misapplied the prevailing legal [s]tandards under the third prong of the "best interest" standard and failed to articulate how the "efforts" provided by DCPP were reasonable and helped to facilitate reunification.

D. Termination of parental rights will do more harm than good.

7

In considering these points, we are mindful that our appellate review of a trial court's decision to terminate parental rights is limited. See N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 554 (2014) (citing In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)). The trial court's findings generally should be upheld so long as they are supported by "adequate, substantial, and credible evidence." R.G., 217 N.J. at 552. A decision in this context should only be reversed or altered on appeal if the trial court's findings were "so wholly unsupportable as to result in a denial of justice." N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 511 (2004). However, a trial court's interpretations of the law and the subsequent legal consequences of the facts are afforded no special deference. See R.G., 217 N.J. at 552.

Applying these well-established principles of appellate review, we affirm the termination of defendants' parental rights, substantially for the sound reasons expressed in Judge James R. Paganelli's written opinion of March 1, 2018 accompanying the final judgment. The judge's decision is amply supported by substantial evidence in the record and is consistent with the applicable legal standards.

The only issue warranting brief discussion is the parents' argument that the placement of Emily with a non-relative resource parent violates the Child

Placement Bill of Rights, N.J.S.A. 9:6B-1 to -6. In this regard, the parents claim that the court failed to adequately consider placing Emily with her other half-siblings. The mother did not argue this particular point in the trial court. The father did raise the issue, albeit belatedly, when he asked for and was denied an adjournment after the trial evidence already had been presented and the record had closed. Despite these procedural shortcomings, we choose to address the sibling placement issue in the public interest. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

There is no tender of competent proof that the father's god-sister, or any other caretaker of Emily's half-siblings, is willing and capable to care for this additional child. Meanwhile, the weight of the evidence on the fourth prong concerning the child's best interests, clearly establishes that Emily should not be taken away from the resource parent, who has cared for her capably for nearly three years since she was a young infant. The cited statute is not violated by the trial court's well-reasoned decision.

In sum, we agree with the Division and the Law Guardian that both the trial proofs and the governing law support the final judgment and that defendants' arguments to set it aside should be rejected.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9

A-3188-17T3